Humberto Guzman *vs.* Commonwealth.

No. 07-P-1670.

Suffolk. October 20, 2008. - June 24, 2009.

Present: Cohen, Graham, & Sikora, JJ.

Further appellate review granted, 454 Mass. 1109 (2009).

*Erroneous Conviction.*

Discussion of G. L. c. 258D, which establishes a right to monetary compensation and other relief for certain erroneous felony convictions. [467-469]

In a civil action brought pursuant to G. L. c. 258D, seeking monetary compensation and other relief for the plaintiff's wrongful conviction and incarceration for felony offenses, the judge hearing a motion for summary judgment erred in concluding that the plaintiff would not be able to prove that he was within the class of persons eligible to seek relief under G. L. c. 258D, § 1(B)(ii), where, when the plaintiff's convictions were reversed because he had not had the benefit of evidence supporting a viable mistaken identity defense, he was granted judicial relief on grounds which tended to establish that he did not commit the crimes charged, as required by § 1(B)(ii); and where, given that the judge was presented only with a preliminary question of eligibility, it was premature to import into the analysis what amounted to an assessment of the merits on a record that was not fully developed for that purpose. [472-479]

Civil action commenced in the Superior Court Department on March 3, 2006.

The case was heard by *Diane M. Kottmyer*, J., on a motion for summary judgment.

*Steven J. Rappaport* for the plaintiff.

*Catherine E. Sullivan*, Assistant Attorney General, for the Commonwealth.

Cohen, J. In 2004, the Legislature enacted the Massachusetts Erroneous Convictions Law, G. L. c. 258D, inserted by St. 2004, c. 444, § 1, to provide monetary compensation and other relief to eligible persons wrongly convicted and incarcerated for felony offenses. The plaintiff, Humberto Guzman, whose convictions for drug trafficking and conspiracy were vacated after he served

more than four years in prison, brought this lawsuit claiming that he was erroneously identified as the perpetrator of the crimes and is entitled to recover under the statute. A judge of the Superior Court granted summary judgment to the Commonwealth and dismissed the case, ruling that Guzman will be unable to prove that he is within the class of persons eligible to seek relief pursuant to G. L. c. 258D, § 1(B).

In this case of first impression, we address the meaning of G. L. c. 258D, § 1(B), and how it applies to Guzman's claim. Because we conclude that Guzman is eligible to bring suit, we reverse and remand the case for further proceedings.

1. *The Erroneous Convictions Law.* General Laws c. 258D was enacted amid heightened awareness of instances of erroneous conviction,[1] and growing interest in providing new legal remedies for persons exonerated after serving time in prison.[2] In c. 258D, the Legislature created a new cause of action, with a right to trial by jury, allowing individuals meeting specified

---

[1]In an article published two years before the enactment of G. L. c. 258D, Boston University Law Professor Stanley Z. Fisher wrote: "A rising tide of prisoner exonerations, a significant number of which have relied upon DNA testing, has revealed how miscarriages of justice can result from deficient practices of police interrogation and eyewitness identification, inadequate disclosure of exculpatory evidence, acceptance of unreliable 'junk science' and 'snitch' testimony, and ineffective assistance of counsel" (footnote omitted). Fisher, Convictions of Innocent Persons in Massachusetts: An Overview, 12 B.U. Pub. Int. L.J. 1, 1-3 (2002). Recent cases discussed by Professor Fisher, including cases involving erroneous identification, were invoked by a primary sponsor of c. 258D in support of its passage. See Testimony of Representative Patricia Jehlen (March 19, 2003), available at http://web.archive.org/web/20040807031601/http://www.patjehlen.org/2506testimony.html (last visited June 22, 2009). The issue also received judicial attention. Six months prior to the enactment of the statute, a concurring opinion in a case decided by the Supreme Judicial Court cited to studies revealing that " 'the erroneous identification of an individual who is not the perpetrator' is a frequent cause of wrongful conviction," particularly in cases involving cross-racial identification. *Commonwealth* v. *Zimmerman*, 441 Mass. 146, 155 n.3 (2004) (Cordy, J., concurring), quoting from Meissner, Thirty Years of Investigating the Own-Race Bias in Memory for Faces: A Meta-Analytic Review, 7 Psychol., Pub. Policy & Law 3, 23 (2001).

[2]See, for example, the discussions of the impediments to recovery under tort and civil rights law contained in Bernhard, When Justice Fails: Indemnification for Unjust Conviction, 6 U. Chi. L. Sch. Roundtable 73, 81-92 (1999); Wisneski, 'That's Just Not Right': Monetary Compensation for the Wrongly Convicted in Massachusetts, 88 Mass. L. Rev. 138, 147 (2004).

criteria to seek recovery of up to $500,000 in damages from the Commonwealth, as well as the expungement or sealing of relevant records, on account of erroneous felony convictions resulting in incarceration. G. L. c. 258D, §§ 1, 5, & 7.[3]

Relevant here are certain subsections of G. L. c. 258D, § 1.[4] Section 1(A) authorizes claims to be brought against the Commonwealth as provided, thereby waiving the Commonwealth's sovereign immunity as to such claims. Section 1(B) is the eligibility provision, which limits "[t]he class of persons eligible to obtain relief" to:

> "(i) those that have been granted a full pardon pursuant to section 152 of chapter 127, if the governor expressly states in writing his belief in the individual's innocence, or

> "(ii) those who have been granted judicial relief by a state court of competent jurisdiction, on grounds which tend to establish the innocence of the individual as set forth in clause (vi) of subsection (C), and if (a) the judicial relief vacates or reverses the judgment of a felony conviction, and the felony indictment or complaint used to charge the individual with such felony has been dismissed, or if a new trial was ordered, the individual was not retried and the felony indictment or complaint was dismissed or a nolle prosequi was entered, or if a new trial was ordered the individual was found not guilty at the new trial; and (b) at the time of the filing of an action under this chapter no criminal proceeding is pending or can be brought against the individual by a district attorney or the attorney general for any act associated with such felony conviction."

Section 1(C) sets out the elements of the claimant's case and the applicable burden of proof. For present purposes, the salient language is found in the introduction to § 1(C) and subsections (i) and (vi):

> "In order for an individual to prevail and recover damages

---

[3]Claims under G. L. c. 258D ordinarily are subject to a two-year statute of limitations. G. L. c. 258D, §§ 8 & 9. Persons like Guzman, who were convicted, incarcerated or released from custody before the effective date of the statute, were given three years from its effective date, December 30, 2004, in which to commence suit. St. 2004, c. 444, § 3.

[4]Section 1 is reproduced in its entirety in an Appendix to this opinion.

against the [C]ommonwealth in a cause of action brought under this chapter, the individual must establish, by clear and convincing evidence, that:

"(i) he is a member of the class of persons defined in subsection (B); [and]

". . .

"(vi) he did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony . . . ."

2. *Guzman's claim.* On March 3, 2006, Guzman filed his complaint and jury demand, alleging, in substance, that he is a member of the class of persons defined in G. L. c. 258D, § 1(B); that, on June 11, 1993, he was convicted and sentenced on three felony indictments, two charging trafficking in cocaine and one charging conspiracy to traffic in cocaine[5]; that he "did not commit these crimes"; that he served more than four years in prison before being released after the allowance of his motion for a new trial; and that he was not retried, because the subject indictments were dismissed with prejudice. The Commonwealth responded with a motion to dismiss, asserting that Guzman did not meet the eligibility requirement of having received, in his criminal case, "judicial relief" vacating his convictions "on grounds which tend to establish [his] innocence." See G. L. c. 258D, § 1(B)(ii).[6] Before the motion was heard, the parties submitted additional materials: the transcripts of Guzman's criminal trial and the hearing on his motion for a new trial, the decisions of the Superior Court judge and this court relative to the allowance of his motion for a new trial, the decision of the Superior Court judge dismissing Guzman's case with prejudice, and the indictment and docket sheet of the United States District Court for the District of Mas-

---

[5]Guzman also was convicted on an indictment for possession of an unregistered firearm. Because that conviction was placed on file and did not result in incarceration, it is not at issue here. See G. L. c. 258D, § 1(A).

[6]Guzman does not allege, and there is no suggestion that he was the recipient of a pardon and could proceed under G. L. c. 258D, § 1(B)(i).

sachusetts relating to the Federal criminal prosecution and guilty pleas of Kenneth Acerra and Walter Robinson, the police detectives who were the Commonwealth's key witnesses at Guzman's criminal trial. The motion judge therefore treated the Commonwealth's motion to dismiss as a motion for summary judgment. However, the sole issue presented remained Guzman's eligibility under § 1(B)(ii), the record having been developed only for this purpose.

Guzman's claim arises from the following events, which we take from the summary judgment record, and which are not in dispute. On October 13, 1994, the Superior Court judge who presided over Guzman's criminal trial entered an order allowing his motion for a new trial. In an unpublished memorandum and order issued pursuant to rule 1:28, this court affirmed the trial judge's order. *Commonwealth* v. *Guzman*, 40 Mass. App. Ct. 1123 (1996). The rationale for the issuance and subsequent affirmance of the new trial order was that Guzman was denied the effective assistance of counsel at trial because, to avoid what trial counsel perceived to be a conflict of interest, counsel made decisions and took actions that prejudiced Guzman's defense and deprived him of a fair trial. Specifically, trial counsel failed to call two witnesses, Arthur Logue and James Spencer, who would have supported Guzman's defense of mistaken identity. Counsel not only failed to call these witnesses, he successfully moved in limine to prevent the Commonwealth from calling Logue as a witness, despite knowing that Logue would be helpful to Guzman. Counsel adopted this course of action because he had represented Spencer in a recently completed case and had assisted and strategized with Logue's attorney in a pending case, and believed that it would be necessary to withdraw from representing Guzman if these individuals testified.

Both the trial judge and this court characterized Guzman's misidentification defense as the central issue at trial. The Commonwealth's theory of Guzman's guilt was that, at the time of the charged offenses, he constructively possessed drugs that Detectives Acerra and Robinson reported finding in a basement boiler that served a first-floor apartment in the Roslindale section of Boston, and in a white Chevrolet Citation automobile registered in the name of Esteban Maffeo. The prosecution

contended that Guzman and Esteban Maffeo were the same person and that he was a drug dealer.

With the exception of a resident of the Roslindale apartment building who identified defendant Guzman as one of a group of three people whom she had seen in the building's basement, Acerra and Robinson were the only witnesses linking Guzman to the places where drugs were said to be found. According to the detectives, they began an investigation after receiving information from an informant about an individual named Esteban, who used the name Humberto. They undertook surveillance and eventually searched three locations: an apartment in the Jamaica Plain section of Boston, the first-floor Roslindale apartment, and the Chevrolet Citation. They testified to the discovery in these locations of papers bearing the names Humberto Guzman and Esteban Maffeo, and to the discovery of drugs in the Citation and in the boiler for the Roslindale apartment. They also testified to the discovery of a cutting agent, but no drugs, at the Jamaica Plain apartment, and to the recovery at the Roslindale apartment of two copies of a safe deposit box key — one key that they took from an individual present in the apartment, Efrain Diaz, who was alleged to be a coconspirator with Guzman, and another found taped to the wall behind a clock. Investigation revealed that the safe deposit box had been rented in the name of Humberto Guzman. When searched, it contained approximately $42,000 in cash, as well as documents bearing Guzman's name.

Acerra and Robinson identified defendant Guzman as the person they had observed on a number of occasions driving to the two apartments in either the Citation or another vehicle, and then entering those premises. Acerra and Robinson also testified that they had observed the same person, defendant Guzman, selling drugs to Logue and Spencer in a parking lot not far from the Roslindale apartment. This uncharged conduct was the only direct evidence of any drug possession and distribution by Guzman.

Guzman's defense was that he had been mistaken for his cousin Esteban Maffeo (the nephew of his father's second wife), who apparently was making use of Guzman's name. Guzman produced a series of witnesses who testified to the separate existence of Esteban Maffeo, and who knew Guzman as a businessman who ran a beauty salon and a towing business. According

to trial counsel, who filed an affidavit and testified at the motion for a new trial, Logue and Spencer would have supported Guzman's defense by testifying that Guzman was not the man from whom they purchased drugs when seen by Acerra and Robinson. Trial counsel also knew at the time of trial that Logue had failed to identify Guzman in a photographic array. Still, as previously indicated, counsel did not call either of these witnesses to testify and affirmatively moved to prevent the Commonwealth from calling Logue in order to avoid what he perceived to be a conflict of interest that would require his withdrawal from Guzman's case.

After this court affirmed the trial judge's order allowing the motion for a new trial, Guzman was not retried. On March 25, 1997, a different Superior Court judge allowed Guzman's motion to dismiss the indictments with prejudice, "due to [the] unavailability of Comm[onwealth] witnesses, Det[ectives] Robinson and Acerra, who now face [F]ederal indictments and whose testimony is essential to the Commonwealth's case."

The gravamen of the Federal charges against Acerra and Robinson was that, over a period of years, they had submitted, and caused other detectives to submit, sworn affidavits containing knowingly and materially false information about informants and surveillance activities, that they had used these warrants to seize and keep for themselves money and property from the premises and persons searched, and that they had prepared and returned false search warrant inventories to cover up their wrongdoing. One count of the Federal indictment concerned money found during the Guzman investigation — $1,210 during the February 10, 1990, execution of a search warrant for the Roslindale apartment, and $42,620 during the February 12, 1990, execution of a search warrant for the safe deposit box rented in the name of Humberto Guzman. On March 6, 1998, Acerra and Robinson entered guilty pleas to this and other counts of the Federal indictment.

3. *Discussion.* In reviewing a summary judgment, we independently consider the record and analyze the legal questions presented. See *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 357 n.9 (2005). Our review is de novo. See *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 123 n.1 (1997).

We begin by examining the statute to frame the issue presented. In this case, the operative provision is G. L. c. 258D, § 1(B)(ii), which contains two separate eligibility requirements. The first requirement, which is set out in the clauses preceding the words "and if," relates to the basis upon which the claimant obtained relief from his conviction. The second requirement relates to the subsequent disposition of the claimant's criminal case, which, as specified, must have terminated finally in the claimant's favor.

It is not disputed that Guzman meets the second requirement, given that his convictions were vacated, a new trial was ordered, he was not retried, the subject indictments were dismissed, and at the time he filed this action, no criminal proceeding was pending or could be brought against him by a district attorney or the Attorney General for any act associated with his convictions. See G. L. c. 258D, § 1(B)(ii)(*a*) & (*b*). This case concerns only the first requirement — that the claimant "have been granted judicial relief by a [S]tate court of competent jurisdiction, on grounds which tend to establish the innocence of the individual as set forth in clause (vi) of subsection (C)." Mindful that "statutory language itself is the principal source of insight into the legislative purpose," *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 (1977), we consider the meaning of the key phrases contained in this requirement.

We agree with the Commonwealth that the "judicial relief" in question is the allowance of Guzman's motion for a new trial, as affirmed by this court, as distinct from the subsequent dismissal of the charges against him as a result of impediments to his retrial. We reach this conclusion based upon the language of the ensuing clause of G. L. c. 258D, § 1(B)(ii), which expressly refers to "judicial relief" in terms of the vacating or reversal of the judgment of conviction ("and if [*a*] the judicial relief vacates or reverses the judgment of a felony conviction"). At least in relation to the present case, the eventual dismissal of the charges figures into the eligibility analysis only insofar as it contributes to satisfying the second requirement, i.e., that Guzman's criminal case was finally terminated in his favor.

We also agree with the Commonwealth that the term "innocence" refers to actual innocence as defined in the cross-

referenced section, G. L. c. 258D, § 1(C)(vi), which requires the claimant to prove, as an element of his case, that "he did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony." The Legislature's focus upon actual innocence also is reflected in § 1(F), which permits the introduction of evidence that may not have been available for use in the claimant's criminal trial because it was seized or obtained in violation of the claimant's constitutional rights.[7]

Finally, we take note of another cross-reference contained in G. L. c. 258D, § 1 — the reference to § 1(B) in § 1(C)(i). That cross-reference has the effect of requiring the claimant to prove as an element of his case, by clear and convincing evidence, that he is within the class of those eligible to recover under the statute.

Viewing the relevant provisions together, and taking into account the standards governing summary judgment, the issue before us may be stated as follows: Has the Commonwealth demonstrated, by reference to the summary judgment record, resolving all conflicts in the record in Guzman's favor, that Guzman has no reasonable expectation of proving by clear and convincing evidence that the order granting his motion for a new trial, as affirmed by this court, was issued on grounds that tend to establish that he did not commit the crimes in question?[8] See *Tosti* v. *Ayik*, 394 Mass. 482, 491 (1985), *S.C.*, 400 Mass. 224, cert. denied sub nom. *United Auto Workers, Local 422* v. *Tosti*, 484 U.S. 964 (1987) (discussing standard for judgment as matter of law where burden of proof is by clear and convincing evidence); *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991) (discussing summary judgment standard).

---

[7]Although the language of the statute is clear in this regard, and we need not resort to legislative history to ascertain the Legislature's intent, our understanding is supported by a letter to Governor Mitt Romney from one of the sponsors of the Erroneous Convictions Law. In urging him to sign a revised (and final) draft of the bill, Representative Patricia Jehlen wrote: "I hope you will sign the bill. Since I first filed it in 1997, we have made dozens of changes to ensure that only people who are actually innocent will receive compensation." Letter from Representative Patricia Jehlen to Governor Mitt Romney (December 23, 2004) (on file at the Massachusetts Archives).

[8]No issue is presented here regarding other connected or lesser included felonies. See G. L. c. 258D, § 1(C)(vi).

The Commonwealth's position is that, as matter of law, Guzman cannot meet his burden of proving eligibility because the grounds on which his convictions were vacated — prejudice to Guzman's misidentification defense stemming from the failure of his counsel to call Logue and Spencer — do not tend to establish that he did not commit the crimes when considered alongside the "much greater bulk of [trial] evidence linking the cocaine to Guzman." The motion judge accepted this position, opining that regardless of any doubts that now may exist as to the detectives' credibility, their identification of Guzman was corroborated by other trial evidence, i.e., the testimony of the resident of the Roslindale apartment building who identified Guzman as one of three men she saw together in the building's basement, and the bank records and other physical evidence recovered during the investigation, including the gun and cocaine seized from the boiler.

Guzman, on the other hand, argues that the grounds upon which he obtained relief, "by definition," tend to establish his innocence. He also disputes the judge's view of the trial evidence, claiming that the testimony of the resident of the Roslindale apartment was inconclusive, and that the physical evidence is suspect because it turned upon the now-damaged credibility of the detectives' testimony about finding it.

We do not read the statute to require, in determining a claimant's eligibility, that the grounds for relief be examined in relation to the strength of the evidence of guilt adduced at the claimant's criminal trial. To be sure, all the evidence relied upon by the parties on the issue of actual innocence, including any inculpatory evidence from the criminal trial that the Commonwealth may choose to introduce, eventually must be weighed and evaluated to determine whether the claimant has met his burden of proof and is entitled to recover. Indeed, if a record fully developed for the purpose of testing the merits of the claimant's case revealed that he had no expectation of meeting his burden, it would be proper to grant summary judgment to the Commonwealth on that basis. However, nothing in the statute, including the requirement in G. L. c. 258D, § 1(C)(i), that the claimant prove, as an element of his case, that he is a member of the eligible class of persons,

imports into the eligibility provision a preliminary assessment of the merits of the claim.[9]

Section 1(C)(i) of G. L. c. 258D would assume importance where there are factual disputes as to the claimant's satisfaction of the eligibility criteria, in which case it is the claimant's burden to prove by clear and convincing evidence that he has met them. Here, however, there are no such factual disputes: the Commonwealth does not contest the basis upon which Guzman obtained relief from his convictions or the final termination of the charges in Guzman's favor. Guzman's status as a member of the class of persons defined in § 1(B)(ii) therefore devolves to a legal question: whether the grounds for allowing his motion for a new trial, viewed on their own terms, "tend to establish" that he did not commit the crime.

In ascertaining the intent of the Legislature in using this phrase, we give paramount importance to the language used. See *Middleborough* v. *Housing Appeals Comm.*, 449 Mass. 514, 523 (2007). There being no clear indication to the contrary, we give the language its "ordinary lexical meaning." *Anderson Street Assocs.* v. *Boston*, 442 Mass. 812, 816 (2004), quoting from *Surrey* v. *Lumbermens Mut. Cas. Co.*, 384 Mass. 171, 176 (1981). The phrase "tend to establish" combines the verb "tend," which means to exhibit a direction or approach toward an object or effect, see Merriam-Webster's Collegiate Dictionary 1287 (11th ed. 2005), with the verb "establish," which means to prove. See *id.* at 427. Furthermore, when used in a legal context, variations of this phrase are used to describe the familiar standard for relevancy. See *Commonwealth* v. *Fayerweather*, 406 Mass.

---

[9]Had the Legislature wished to require threshold screening of the merits, it could have done so. For example, the New York statute authorizing claims for unjust conviction and imprisonment provides for preliminary screening by the court for likelihood of success at trial: "The claim shall state facts in sufficient detail to permit the court to find that claimant is likely to succeed at trial in proving that (a) he did not commit any of the acts charged in the accusatory instrument or his acts or omissions charged in the accusatory instrument did not constitute a felony or misdemeanor against the state, and (b) he did not by his own conduct cause or bring about his conviction. The claim shall be verified by the claimant. If the court finds after reading the claim that claimant is not likely to succeed at trial, it shall dismiss the claim, either on its own or on motion of the state." N.Y. Jud. Ct. Acts Law § 8-b (4) (McKinney 1989). Chapter 258D contains no such provision despite its similarity in many other respects to the pre-existing New York law.

78, 83 (1989), quoting from *Commonwealth* v. *Chretien*, 383 Mass. 123, 136 (1981) (evidence is relevant if it has "rational tendency to prove an issue in the case"); Mass. G. Evid. § 401 (2008-2009) (" 'Relevant evidence' is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"). We therefore conclude that the Legislature used the phrase "grounds which tend to establish innocence" to mean no more and no less than grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit the crime.

Viewed in this way, the statute places reasonable limits on eligibility that are in keeping with the Legislature's goal of providing a remedy for innocent persons erroneously convicted of crimes. As the Commonwealth notes, the original bill passed by the Legislature used a different formulation: "grounds consistent with innocence." The Governor returned the bill for amendment with a number of proposed changes, including the substitution of the words "grounds which tend to establish innocence." 2004 House Doc. No. 5030. This substitute language was adopted and included in the bill that the Governor signed.

We infer that the new language was intended to be somewhat more restrictive than the old language. Propositions are "consistent with" each other if they are compatible and can coexist harmoniously. See Merriam-Webster's Collegiate Dictionary, *supra* at 266, 253. So, for example, reversal of a conviction because of the violation of a procedural right may well be consistent with the defendant's actual innocence without necessarily tending to establish it. That said, the more stringent wording of G. L. c. 258D, § 1(B)(ii), as finally enacted does not express an intent to limit threshold eligibility only to those individuals exonerated as a result of compelling or overwhelming exculpatory evidence.

In the present case, Guzman's convictions were vacated because his defense of misidentification — viewed by the trial judge and this court as the central issue in the case — was prejudiced by counsel's failure to call witnesses who would have testified that Guzman was not the person whom Acerra and Robinson identified as the person they kept under surveillance and saw completing a drug transaction. Whatever limitations G. L.

c. 258D, § 1(B)(ii), may impose in other circumstances, we do not think they apply here. Although presented in the context of a claim of ineffective assistance of counsel, underlying the judicial relief granted to Guzman was the assumption that the erroneously omitted evidence was probative of the conclusion that the culprit was someone else. Accordingly, when his convictions were reversed because he did not have the benefit of evidence supporting a viable mistaken identity defense, he was granted judicial relief on grounds which tend to establish that he did not commit the crimes charged, as required by § 1(B)(ii).[10]

We do not intimate by our views on the eligibility provision that the Commonwealth is precluded from testing the merits of a G. L. c. 258D claim on an appropriate record. To the contrary, we recognize, as a theoretical matter, that there could well be instances where the Commonwealth would be entitled to judgment as matter of law (e.g., summary judgment or directed verdict) on the actual innocence issue. The question presented would be whether, viewing the facts in the light most favorable to the claimant, a jury could find, by clear and convincing evidence, that the plaintiff did not commit the crime. See *Callahan* v. *Westinghouse Bdcst. Co.*, 372 Mass. 582, 587-588 & n.3 (1977), quoting from *Dacey* v. *Connecticut Bar Assn.*, 170 Conn. 520, 537 (1976) (clear and convincing evidence burden turns not on quality of evidence but upon how it reasonably may be received by trier of fact; burden is sustained if evidence "induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true"); *Tosti* v. *Ayik*, 394 Mass. at 491 (applying directed verdict standard to defamation case requiring clear and convincing proof of malice).

It bears emphasizing, however, that eligibility was the only basis upon which the Commonwealth's motion in this case was brought, opposed, and decided. Here, where the judge was presented only with a preliminary question of eligibility, it was premature to import into the analysis what amounted to an as-

---

[10]Suffice it to say that not all cases in which a new trial is granted on ineffective assistance grounds necessarily will result in eligibility to bring suit under G. L. c. 258D. Essential to our analysis here is that counsel's ineffective assistance took the form of depriving Guzman of the introduction of evidence tending to establish his actual innocence.

sessment of the merits on a record that was not fully developed for that purpose.

4. *Conclusion.* Because it was error to conclude that Guzman was not within the class of persons permitted to obtain relief under G. L. c. 258D, § 1(B)(ii), the judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

APPENDIX.

"CHAPTER 258D

"COMPENSATION FOR CERTAIN ERRONEOUS FELONY
CONVICTIONS

"Section 1. (A) A claim may be brought against the commonwealth for an erroneous felony conviction resulting in incarceration as provided in this chapter.

"(B) The class of persons eligible to obtain relief under this chapter shall be limited to the following:—

"(i) those that have been granted a full pardon pursuant to section 152 of chapter 127, if the governor expressly states in writing his belief in the individual's innocence, or

"(ii) those who have been granted judicial relief by a state court of competent jurisdiction, on grounds which tend to establish the innocence of the individual as set forth in clause (vi) of subsection (C), and if (a) the judicial relief vacates or reverses the judgment of a felony conviction, and the felony indictment or complaint used to charge the individual with such felony has been dismissed, or if a new trial was ordered, the individual was not retried and the felony indictment or complaint was dismissed or a nolle prosequi was entered, or if a new trial was ordered the individual was found not guilty at the new trial; and (b) at the time of the filing of an action under this chapter no criminal proceeding is pending or can be brought against the individual by a district attorney or the attorney general for any act associated with such felony conviction.

"(C) In order for an individual to prevail and recover damages against the commonwealth in a cause of action brought under this chapter, the individual must establish, by clear and convincing evidence, that:—

"(i) he is a member of the class of persons defined in subsection (B);

"(ii) he was convicted of an offense classified as a felony;

"(iii) he did not plead guilty to the offense charged, or to any lesser included offense, unless such guilty plea was withdrawn, vacated or nullified by operation of law on a basis other than a claimed deficiency in the plea warnings required by section 29D of chapter 278;

"(iv) he was sentenced to incarceration for not less than 1 year in state prison or a house of correction as a result of the conviction and has served all or any part of such sentence;

"(v) he was incarcerated solely on the basis of the conviction for the offense that is the subject of the claim;

"(vi) he did not commit the crimes or crime charged in the indictment or complaint or any other felony arising out of or reasonably connected to the facts supporting the indictment or complaint, or any lesser included felony; and

"(vii) to the extent that he is guilty of conduct that would have justified a conviction of any lesser included misdemeanor arising out of or reasonably connected to facts supporting the indictment or complaint, that he has served the maximum sentence he would have received for such lesser included misdemeanor and not less than one addition year in a prison.

"(D) The claimant shall attach to his claim certified copies of: the mittimus that shows the claimant's sentence to incarceration and; the warrants necessary to grant a pardon pursuant to section 152 of chapter 127 or; criminal case docket entries or documents related thereto in the case of judicial relief.

"(E) For the purposes of this chapter 'conviction' or 'convicted' shall include an adjudication as a youthful offender, if such adjudication resulted in the youthful offender's incarceration in a house of correction or state prison.

"(F) The commonwealth and any individual filing an action for compensation under this chapter shall have the right to a jury trial on any action so filed. In the interest of doing substantial justice, with regard to weight and admissibility of evidence submitted by the claimant or the commonwealth, the court presiding at a jury-waived trial shall exercise its discretion by giving due consideration to any difficulties of proof caused by the passage of time, the death or unavailability o[f] witnesses, or other factors not caused by the claimant, or those acting on the claimant's or the commonwealth's behalf. At a jury trial, the court shall consider these same factors as part of the exercise of its discretion when determining the admissibility and weight of evidence, and the court shall instruct the jury that it may consider the same factors when it weighs the evidence presented at trial. No evidence proffered by any party shall be excluded on grounds that it was seized or obtained in violation of the Fourth, Fifth of Sixth amendments to the Constitution of the United States, or in violation of Articles 12 or 14 of Part the First of the Constitution of Massachusetts."

Inserted by St. 2004, c. 444, § 1, effective December 30, 2004.