SHAWN DRUMGOLD vs. COMMONWEALTH.

Suffolk. April 5, 2010. - November 23, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Erroneous Conviction.*

In a civil action in which the plaintiff claimed that he was entitled to recover under the Erroneous Convictions Law, G. L. c. 258D, the judge properly denied the Commonwealth's motion for summary judgment, where the grant of a new trial in the underlying criminal case, on grounds of newly discovered evidence relating to the reliability of a critical identification witness at trial, as well as the failure of the Commonwealth to disclose exculpatory evidence regarding a second, significant witness, rested on facts and circumstances probative of the proposition that the plaintiff did not commit the crime charged in the underlying action. [376-379] COWIN, J., dissenting, with whom SPINA, J., joined.

CIVIL ACTION commenced in the Superior Court Department on December 5, 2006.

The case was heard by *D. Lloyd Macdonald*, J., on a motion for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Catherine E. Sullivan*, Assistant Attorney General (*Gwen A. Werner*, Assistant Attorney General, with her) for the Commonwealth.

*Michael W. Reilly* (*Rosemary Curran Scapicchio* with him) for the plaintiff.

*David M. Siegel*, for New England Innocence Project, amicus curiae, submitted a brief.

CORDY, J. The plaintiff in this case, Shawn Drumgold, was convicted of murder in the first degree and served approximately fourteen years in prison before his conviction was vacated in 2003. He subsequently brought this lawsuit claiming that he was entitled to recover under the Massachusetts Erroneous

Convictions Law, G. L. c. 258D (c. 258D). The Commonwealth moved for summary judgment, contending only that Drumgold would be unable to prove that he is within the class of persons eligible to seek relief under the statute,[1] that is, that Drumgold would be unable to prove that his conviction was vacated on "grounds [that] tend to establish [his] innocence." G. L. c. 258D, § 1 (B) (ii). A judge in the Superior Court denied the Commonwealth's motion. We granted the Commonwealth's application for direct appellate review.[2] Relying in large measure on the principles articulated in *Guzman* v. *Commonwealth, ante* 354 (2010), also decided today, we affirm the denial of summary judgment for the Commonwealth and further direct that partial summary judgment be entered against the Commonwealth on Drumgold's claim of eligibility.[3] The case may now proceed to a trial at which Drumgold will bear the burden of establishing by "clear and convincing evidence" that he did not commit the crimes with which he was charged. See G. L. c. 258D, § 1 (C).

1. *Background.* As is more fully explained *infra*, Drumgold was granted a new trial in the underlying criminal case on the motion of the Commonwealth filed at the conclusion of an evidentiary hearing on Drumgold's motion for a new trial. After the judge's allowance of the motion, the Commonwealth filed a nolle prosequi ending all criminal proceedings against Drumgold that arose out of a shooting resulting in the death of a young child in the summer of 1988. In the Commonwealth's memorandum urging the judge to vacate Drumgold's conviction and explaining its intention to terminate the case, the Commonwealth conceded what it termed the "inescapable conclusion" that Drumgold had not received a fair trial, and that it could not determine his guilt or innocence.

---

[1] In its motion for summary judgment, the Commonwealth did not challenge the viability of the plaintiff's claim on other grounds. We make no assessment whether the Commonwealth might succeed in a summary judgment challenge to the underlying merits of the claim on the basis of a record fully developed for that purpose.

[2] The Commonwealth filed an appeal from the judge's order denying summary judgment, claiming that the ruling was immediately appealable under the doctrine of present execution, see *Brum* v. *Dartmouth*, 428 Mass. 684, 688 (1999) (doctrine of present execution applies where public entity claims immunity from suit). We do not rule on the point.

[3] We acknowledge the amicus brief of the New England Innocence Project.

In its motion for summary judgment in the civil case, the Commonwealth argued that Drumgold would be unable to meet the "threshold requirement" that "his conviction was overturned on grounds that 'tend to establish [his actual] innocence' " because the judge who granted the new trial had concluded only that Drumgold had been denied a fair trial, not that he was likely to have been innocent. In support of its motion, the Commonwealth submitted ten exhibits, all relating to the motions for new trial.[4,5]

In denying the Commonwealth's motion for summary judgment, a judge in the Superior Court, relying on the decision of the Appeals Court in *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. 466, 474 (2009), ruled that "[t]here is a material issue of fact as to whether 'the order granting [the plaintiff's] motion for a new trial . . . was issued on grounds that tend to establish that he did not commit the crimes in question.' "

Drumgold's claim arises from the following events, taken from the summary judgment record and not materially in dispute.

---

[4]Specifically, the Commonwealth included the following as attachments to its motion: (1) the murder indictment; (2) the criminal docket; (3) the decision of this court affirming Shawn Drumgold's convictions and the denials of his first two motions for a new trial, *Commonwealth* v. *Drumgold*, 423 Mass. 230 (1996); (4) Drumgold's third motion for a new trial; (5) a supplemental memorandum in support of Drumgold's motion for a new trial; (6) the Commonwealth's motion for an evidentiary hearing on Drumgold's third motion for a new trial; (7) the Commonwealth's posthearing motion to vacate the conviction and grant a new trial; (8) the Commonwealth's posthearing memorandum in support of the motion to vacate the conviction and grant a new trial; (9) transcript of the ruling that allowed the motion for a new trial; and (10) a copy of the order of nolle prosequi.

[5]On appeal, the Commonwealth also provided selected transcripts from the criminal trial, the transcripts from the evidentiary hearing on the motion for a new trial, and selected exhibits from the evidentiary hearing as part of the record considered by the judge below on the summary judgment motion. Prior to argument in this case, Drumgold moved to strike those portions of the appellate record. We deny Drumgold's motion to strike those portions of the record, in part because Drumgold contended in opposition to the Commonwealth's motion for summary judgment that the ruling allowing the motion for a new trial "cannot be understood without review of the entire [m]otion for [n]ew [t]rial [p]roceeding and her entire ruling." The transcripts are properly part of the record on appeal. Cf. *Weinberg* v. *Board of Registration in Med.*, 443 Mass. 679, 690 (2005) (documents filed before licensing board but not withdrawn were properly part of record on appeal).

See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002); *Pederson* v. *Time, Inc.*, 404 Mass. 14, 16-17 (1989).

a. *The criminal trial.* Drumgold was convicted of murder in the first degree on October 13, 1989, and sentenced to a term of life imprisonment. This court affirmed the conviction. *Commonwealth* v. *Drumgold*, 423 Mass. 230, 232 (1996). The victim, a twelve year old girl, was shot and killed on August 19, 1988, in the Roxbury neighborhood of Boston, when two or three masked gunmen approached a group of teenagers and began shooting. The Commonwealth's theory at trial was that Drumgold was one of the shooters. According to the Commonwealth, the intended victim of the shooting (Chris Chaney) was seated on a mailbox immediately adjacent to the victim, and the motive was one of retaliation for Chaney having shot Drumgold's friend, Romero Holliday.

As the Commonwealth described at the hearing on its motion for new trial, its case at trial was "centered on two or three shooters wearing masks, dressed in nondistinctive clothing without physical evidence, without forensic scientific evidence, and without any admissions or other incriminating statements from the defendant." Six witnesses for the Commonwealth testified that they had seen the gunmen. Four testified as to having seen two gunmen, and two testified as to having seen three gunmen. All the witnesses testified that the gunmen were wearing black clothing and Halloween masks, although there was divergent testimony as to the details of the clothing worn by the shooters.

One witness, Mary Alexander (described as "critical" by the Commonwealth), resided less than one block from the scene of the shooting. When she heard gunfire, she ran outside to bring her son and another child into the house. While she was standing in the doorway, she saw two men, one of whom she identified more than one year after the shooting as Drumgold, climb over the fence from the direction of the Boston Edison power plant. She testified at trial that both were wearing dark shirts and jeans and that she watched Drumgold tuck a gun into his waistband.

Ricky Evans, described as a "significant" witness for the Commonwealth, testified that he had encountered Drumgold prior to the shooting at a location two blocks away from the

scene. He explained that he observed another person, Terrance Taylor, approach Drumgold and inform him where they could find Chaney, after which Drumgold and Taylor departed together, both carrying guns.[6] Evans further testified that both men reappeared about forty-five minutes later without the guns, and when Evans questioned them about where the guns were, Taylor said that the guns were "hot" and that he had "stashed" them.

Drumgold's defense was one of misidentification and alibi. He testified as to his whereabouts at the time of the shooting and called witnesses who corroborated his testimony by testifying that they were with him or observed him in locations other than the scene of the shooting the time it occurred.[7]

b. *Motions for a new trial.* Drumgold filed his third motion for a new trial on March 11, 2002, nearly thirteen years after he was found guilty of murder in the first degree.[8] Throughout 2002 and 2003, he filed supplemental pleadings in support of his motion that identified various bases for a new trial, including (1) the recantations of certain trial witnesses, including Evans; (2) newly discovered evidence relating to brain cancer suffered by Alexander both at the time she made her identification and at the time she testified; and (3) undisclosed promises and inducements provided to Evans in connection with his appearance as a witness in the Commonwealth's case against Drumgold. Both Drumgold and the Commonwealth requested an evidentiary hearing on the motion, which was held over six days in July and August of 2003.[9]

As noted, at the conclusion of the hearing the Commonwealth filed its own motion to vacate the conviction and grant a new trial, and the judge allowed the motion. Because the judge specifically allowed the Commonwealth's motion, the memoran-

---

[6]Terrance Taylor was indicted as a codefendant in the killing. He was acquitted at trial.

[7]Drumgold also attempted to call as a witness the alleged target of the shooting to testify that there was no animosity between the witness and Drumgold. At trial, this witness invoked his privilege under the Fifth Amendment to the United States Constitution and thus did not testify.

[8]Two prior motions based on other grounds had been denied in 1989 and 1993.

[9]During the hearing, the judge heard testimony from twenty-two witnesses and received thirty-three exhibits.

dum filed in support of the motion provides context helpful and relevant to an understanding of the judge's ruling.[10] The Commonwealth, in its memorandum, urged the judge to grant a new trial based principally on two grounds that, taken together, the Commonwealth contended, warranted the relief.[11]

(i) *Newly discovered evidence relating to Commonwealth's witness Alexander.* The Commonwealth set out the circumstances surrounding Alexander's role at trial as follows:

> "That Mary Alexander was a critical witness for the Commonwealth at trial is undisputed; together with Eric Johnson and Tracie Peaks,[12] she provided testimony identifying [Drumgold] as one of the gunmen involved in the murder. When initially shown a photographic array by police investigators on August 26, 1988, one week after the murder, Ms. Alexander could not make a positive

---

[10]Drumgold contends in his brief that the judge hearing his third motion for a new trial "did not, at any point, adopt the arguments urged by [the prosecutor]" and, "instead, made a general finding that Drumgold had been denied a fair trial arising out of the allegations of newly discovered evidence and the failure to produce exculpatory evidence." He also asserts that the Commonwealth's motion is not competent evidence for the summary judgment record because it is not an affidavit and does not establish material facts. As the record of the hearing indicates, however, the judge specifically allowed *the Commonwealth's motion*; therefore, a review of the arguments made by the Commonwealth in its accompanying memorandum (based on the evidence adduced at the evidentiary hearing) is relevant to a proper understanding of the judge's ruling.

[11]In its motion, the Commonwealth reasoned that, "[s]tanding alone, none of the grounds alleged by the defendant — whether the recantations of certain trial witnesses, certain newly discovered evidence, or certain nondisclosed exculpatory evidence — necessarily compels a new trial. Collectively and cumulatively, however, the allegations as a whole warrant serious, serious consideration — particularly when analyzed with all of the other items reviewed and factors considered by the Commonwealth here . . . . [The evidence introduced at the evidentiary hearing] lead[s] to one inescapable conclusion: that justice may not have been done."

[12]Tracie Peaks also testified at the hearing on the motion for a new trial that her testimony before the grand jury and at Drumgold's criminal trial were the result of coercion from both the police and the prosecutor's office. The Commonwealth dismissed her recantations as lacking credibility in light of the cross-examination and independent evidence introduced at the motion hearing. Although the motion judge alluded to recantations by witnesses as comprising part of the basis of her ruling, she did not specifically identify which recantations she found credible. Because she explicitly allowed the Commonwealth's motion, it is likely that she did not credit Peaks's recantation.

identification of any suspect, including [Drumgold]. Shortly
before trial, in September, 1989, she identified [Drumgold]
from a single eight-by-ten inch photograph displayed to
her by the defendant's trial counsel; on October 2, 1989,
during the jury view of the crime scene, she again identi-
fied [Drumgold], who had accompanied counsel on the
view. [In the intervening thirteen months between August,
1988, and September, 1989,] Ms. Alexander had seen
[Drumgold's] photograph on television and in the
newspapers."

The newly discovered evidence relating to Alexander was that
she was suffering from terminal brain cancer and its attendant
symptoms during the time she identified Drumgold as one of the
shooters and testified at the trial. Alexander's medical records
indicate that she was admitted into the hospital after suffering a
seizure in February, 1989, with a three-month history of severe
headaches and blurring of vision. Shortly thereafter, she had
surgery to remove a malignant tumor from her brain, followed by
radiation therapy. In May, 1989, she complained of amnesia (forget-
ting things like her son's name), not remembering where she
was, and frequent headaches. In late September, 1989, she was
admitted to the hospital after a fall. (The trial in Drumgold's case
took place in late September and early October of 1989.) Alex-
ander succumbed to brain cancer in September, 1993.

The Commonwealth acknowledged that "the very nature of
the symptoms themselves renders them material and 'carries a
measure of strength in support of the defendant's position.' "
The Commonwealth further recognized that, given the circum-
stances surrounding Alexander's "evolving" identification of
Drumgold and the importance of her testimony to the Com-
monwealth's case and its prominence in closing argument, her
testimony "may arguably have 'been a real factor in the jury's
deliberations.' "

(ii) *Nondisclosure of exculpatory evidence relating to Com-
monwealth's witness Evans.* Evans recanted his trial testimony
during the hearing on the motion for a new trial.[13] The Com-
monwealth urged the judge to reject this recantation but agreed

---

[13]At the evidentiary hearing, Ricky Evans testified that he was approached
by police officers regarding the murder case against Drumgold while they

that there was credible testimony at the hearing about undisclosed promises, rewards, and inducements made to Evans with respect to (1) cases then pending against him and (2) the procurement of food and accommodations for him. Specifically, it was revealed that the police had accompanied Evans to court in order to remove a default warrant and advised him that they would bring Evans's cooperation in the case against Drumgold to the attention of the prosecutor responsible for pending cases against him, as well as the judge presiding over them. Further, although the details of the purpose, extent, and duration of the payments for the meals and accommodations of Evans were the subject of conflicting testimony at the hearing, the Commonwealth acknowledged that Evans had spent some period of time residing at a motel and taking his meals at the motel's restaurant and that the costs of these expenses were borne by law enforcement.[14]

Given all the attendant circumstances, the Commonwealth conceded that the information about promises made to Evans with respect to his pending cases and the payment of his accommodation and meal expenses "constituted exculpatory evidence that should have been disclosed." It further conceded that the trial prosecutor (who might not have known all the details with respect to the arrangement) did not correct Evans's false testimony at the trial with regard to those promises, rewards, and inducements.

Finally, the Commonwealth agreed that Evans's testimony

were investigating the circumstances surrounding the shooting death of his cousin, during which Evans was also shot. He further testified that he was homeless and aged seventeen or eighteen at the time he was approached by these officers. He stated that default warrants pending against him were removed in exchange for his testimony. He also recanted the substance of his trial testimony against Drumgold, explaining that he testified favorably for the Commonwealth in the face of suggestions of police officers that Drumgold and his codefendant were the suspects, rather than another man, whom Evans had heard was the perpetrator.

[14]The Commonwealth's concession on these points is unsurprising. On the morning of Evans's testimony at the hearing, the prosecutor revealed to the judge that the lead detective in the murder of the victim had confirmed to him that Evans had in fact been lodged in a motel in Boston and that law enforcement officials had arranged for payment of the room and his meals; and that it had been made known to Evans, prior to the latter's trial testimony, that the detective would speak on Evans's behalf to the district attorney's office or the judge with respect to pending cases against him.

inculpating Drumgold was highlighted and played a prominent role in the Commonwealth's closing argument. Hence, its failure to disclose exculpatory evidence regarding the terms under which he testified "deprived [Drumgold] of his constitutional right to cross-examine . . . Evans effectively to show potential bias."

(iii) *The judge's ruling on the motion for new trial.* Issuing her ruling from the bench, the judge explained her decision to allow the Commonwealth's motion in the following terms:

> "In this third motion for a new trial, the defendant has put forward numerous grounds as to why the Court should grant him a new trial. Those reasons include, as [the prosecutor] has stated, the fact that there is newly-discovered evidence, that several government witnesses have now recanted their testimony,[15] the fact that . . . a key witness had a [medical] condition which possibly affected her ability to accurately identify the defendant, [which] was not disclosed at trial, and the failure of the prosecutors to disclose various exculpatory evidence.
>
> " . . .
>
> "I have considered the entire course of this case beginning with the investigation which began immediately after the murder of [the victim] back on August 19 of 1988, the grand jury proceedings, the transcripts of the trial, as well as the evidence presented at the . . . evidentiary hearings on the defendant's motion for a new trial, and there is only one conclusion that can be reached on the totality of this record and this is that justice was not done and that this defendant was denied some of his constitutional rights to which he was entitled. One of those very important rights was the right to a fair trial.

---

[15]At the evidentiary hearing on the motion for new trial, three of the Commonwealth's witnesses recanted their trial testimony, which they claimed had been given as the result of pressure from law enforcement personnel. As to two of these witnesses, Tracie Peaks and Vantrell McPherson, both of whom provided testimony at trial identifying Drumgold, the Commonwealth contended that the recantations were not credible. As to the third witness, Evans, discussed *supra,* the Commonwealth agreed that "the testimony (and demeanor) of Mr. Evans at the motion hearing with respect to certain promises, rewards, or inducements allegedly made to him by law enforcement authorities in 1989 may arguably ring true."

"So, therefore, I am allowing the Commonwealth's motion to vacate the conviction and to grant a new trial. I want to emphasize that nothing in this ruling in any way should be construed as a specific finding or determination by this Court as to any grounds advanced by the defendant in his motion for a new trial, that includes his allegations of police and prosecutorial misconduct, *nor should this ruling in allowing this motion in any way be taken as any finding or determination about this defendant's guilt or innocence in connection with the murder of [the victim].* What this ruling does reflect is that the Court agrees with both the Commonwealth and the defendant that the system in this case failed to afford Mr. Drumgold all the rights to which he was entitled, and that justice, therefore, was not done." (Emphasis added.)

2. *Discussion.* In the circumstances presented here, Drumgold is eligible to bring suit under c. 258D if the "grounds" on which his motion for a new trial was granted "tend to establish [his] innocence," G. L. c. 258D, § 1 (B) (ii), that is, as we concluded in *Guzman* v. *Commonwealth, ante* 354 (2010), if the relief granted to Drumgold was on "grounds resting upon facts and circumstances probative of the proposition that [he] did not commit the crime." *Id.* at 362, quoting *Guzman* v. *Commonwealth,* 74 Mass. App. Ct. 466, 477 (2009).

While the parties agree with the judge's conclusions that a new trial was required because "justice . . . was not done," and that Drumgold was deprived of his constitutional "right to a fair trial," they disagree as to the breadth of the underlying grounds on which those conclusions rest. At a minimum, however, they agree that her conclusions rest on grounds of newly discovered evidence relating to the reliability of a critical identification witness at trial, as well as the failure of the Commonwealth to disclose exculpatory evidence regarding a second "significant" witness.[16] They also agree that the prosecutor featured the testimony of both witnesses in his closing argument

[16]The parties disagree about the extent to which the judge's ruling also rests on the evidence of recantations and other investigative and trial irregularities pursued by Drumgold at the evidentiary hearing on his motion for a new trial. While it is accurate, as Drumgold contends, that the judge alluded in her ruling both to "recantations" and her consideration of "the entire course of this case beginning with the investigation . . . the grand jury proceedings, [and]

to rebut Drumgold's claim of misidentification and the evidence of alibi.

There is disagreement between the parties whether these grounds tend to establish Drumgold's innocence. The Commonwealth argues that the judge framed her ruling in terms of fair trial and emphasized that her ruling was not to be "taken as any finding or determination about [Drumgold's] guilt or innocence" — in other words, that the grounds of the relief tended only to undermine the Commonwealth's ability to prove Drumgold's guilt beyond a reasonable doubt (by depriving Drumgold of important evidence) but did not tend to establish actual innocence (such as depriving him of witnesses that might establish his innocence, see *Guzman* v. *Commonwealth, supra* at 365). Drumgold, on the other hand, argues that the allowance of a new trial based on newly discovered evidence necessarily includes a finding of "grounds [that] tend to establish [his] innocence," G. L. c. 258D, § 1 (B) (ii), because the judge may not grant the motion unless she finds that the newly-discovered evidence "casts real doubt on the justice of the conviction," *Commonwealth* v. *Pike*, 431 Mass. 212, 218 (2000). He makes a similar argument with respect to the undisclosed exculpatory evidence relating to Evans, reasoning that the judge may not allow a motion for new trial on this basis unless she concludes that the withheld evidence "likely deprived the defendant of an otherwise available, substantial ground of defense." *Commonwealth* v. *Tucceri*, 412 Mass. 401, 413 (1992), quoting *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). According to Drumgold, both grounds tend to establish innocence because of the substantial risk that the jury would have reached a different conclusion had the evidence been submitted at trial.

Although the judge stated in her ruling that Drumgold had been deprived of the right to a fair trial, we do not agree with the Commonwealth that a decision based on grounds implicat-

the transcripts of the trial, as well as the evidence presented at the [evidentiary] hearings," it is also the case that she pointedly stated that she was making no "finding or determination" as to any of the "grounds" advanced by Drumgold, "includ[ing] . . . allegations of police and prosecutorial misconduct." We need not resolve this dispute here, because the grounds on which the parties agree are sufficient to resolve the issue of eligibility raised in this case.

ing fair trial rights precludes us from inquiring whether those grounds rest on facts and circumstances probative of the proposition that the defendant did not commit the crime. Nor is it necessary that the judge granting relief make any specific finding as to the likely innocence of the defendant in order for him to be eligible to bring an action under c. 258D. Implicit in the judge's allowance of the Commonwealth's motion for a new trial was her recognition that the newly discovered evidence relating to Alexander and the undisclosed evidence related to Evans were probative of the central issue at trial: the reliability of the identification of Drumgold as one of the shooters and, correspondingly, the veracity of his alibi defense. Drumgold's guilt turned on the jury accepting the testimony of Evans and Alexander as being credible and rejecting the testimony of the defendant and others as to the defendant's alibi.

At its heart, the motion for a new trial was allowed because the fact finder was forestalled from making a fully informed decision as to the defendant's guilt or innocence because of the absence of critical evidence that would have cast real doubt on the reliability of the Commonwealth's witnesses, and might well have changed the jury's credibility calculation when weighing their testimony against that of the defendant and the witnesses called on his behalf. In other words, the grounds rested on facts and circumstances probative of Drumgold's innocence. *Guzman* v. *Commonwealth, supra* at 362.

We conclude, therefore, that summary judgment for the Commonwealth with respect to Drumgold's eligibility to bring suit under the statute was properly denied.[17] Because the question whether the grounds for relief "tend to establish" the plaintiff's innocence is primarily a question of law, see *id.* at 365, we direct that partial summary judgment be granted against the

---

[17]We agree with the Appeals Court that the statute does not require that the grounds on which the new trial was allowed "be examined in relation to the strength of the evidence of guilt adduced at the claimant's criminal trial." *Guzman* v. *Commonwealth,* 74 Mass. App. Ct. 466, 475 (2009). This is a task best suited for the trial stage of a claimant's case, where the claimant must prove his actual innocence. G. L. c. 258D, § 1 (C) (vi). For example, a trial on Drumgold's claim will no doubt involve many of the same issues raised by his criminal trial, including the reliability of the eyewitness testimony of Mary Alexander and Evans.

Commonwealth on so much of Drumgold's claim as alleges that he is eligible to seek relief under the statute. G. L. c. 258D, § 1 (B) (ii). The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

COWIN, J. (dissenting, with whom Spina, J., joins). I cannot agree with the court's conclusion that Shawn Drumgold was granted relief on "grounds [that] tend to establish [his] innocence," G. L. c. 258D, § 1 (B) (ii), a requirement of the Massachusetts Erroneous Convictions Law, G. L. c. 258D (statute). Thus, I respectfully dissent from today's decision.

The Massachusetts Legislature adopted the statute to provide a cause of action against the Commonwealth for certain "erroneous felony conviction[s] resulting in incarceration." G. L. c. 258D, § 1 (A). To that end, the Legislature granted eligibility for relief to a limited class of persons for whom certain indicia of actual innocence were present. G. L. c. 258D, § 1 (B). Specifically, the Legislature limited eligibility to those claimants who receive a gubernatorial pardon that "expressly states in writing [the Governor's] belief in the individual's *innocence*," and to those claimants who are granted judicial relief on "grounds [that] tend to establish the *innocence* of the individual" (emphasis supplied). G. L. c. 258D, § 1 (B) (i), (ii).

In interpreting the statute, we give weight to the words that the Legislature has chosen. The statute emphasizes as a condition of eligibility the defendant's "innocence," not once but twice. The Legislature is presumably aware of the important distinction between grounds tending to establish innocence and those tending to support dismissal, acquittal, or reversal of a criminal charge on other grounds. See *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977) ("We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions"). This court has discussed the distinction between a showing of innocence and a showing of other grounds for relief in the context of legal malpractice. See *Glenn*

v. *Aiken*, 409 Mass. 699, 704-705 (1991) (distinguishing criminal defendant's ability to forestall conviction on ground of violation of constitutional or statutory rights from defendant's ability to establish his innocence). Indeed, the plea by which a defendant gives notice that he will contest criminal charges is never "innocent." It is always "not guilty," and the distinction between the terms is well known.

It is with this understanding of the statute's eligibility requirements that we analyze the Superior Court judge's order granting the Commonwealth's motion for a new trial.[1] The Commonwealth's memorandum in support of its motion, filed at the conclusion of the evidentiary hearing on Drumgold's motion for a new trial, stated that evidence introduced at that hearing "establish[ed] that [Drumgold] did not receive a fair trial." The judge's decision echoed this focus on the adequacy of the trial, concluding that "this defendant was denied some of his constitutional rights to which he was entitled. One of those very important rights was the right to a fair trial." That by itself does not suggest that Drumgold did not commit the acts charged, i.e., the ruling does not "tend to establish [his] innocence." It means only that the determination of guilt came about by means of a proceeding that was flawed. Accordingly, the eligibility requirements of the statute have not been satisfied.

The court reads into the judge's decision an "[i]mplicit" recognition that Drumgold's impeachment evidence as to Ricky Evans and Mary Alexander was probative of Drumgold's whereabouts at the time of the crime, and thus of his innocence. See *ante* at 378. The judge could hardly have been more explicit in dispelling any such inference:

> "I want to emphasize that nothing in this ruling in any way should be construed as a specific finding or determination by this [c]ourt as to any grounds advanced by the defendant in his motion for a new trial, . . . nor should this ruling in allowing this motion in any way be taken as

[1] Because the ruling was delivered from the bench on November 6, 2003, prior to the effective date of the statute of December 30, 2004, see G. L. c. 258D, the judge could not have had the statute in mind when granting the new trial.

> any finding or determination about this defendant's guilt
> or innocence . . . ."

Rather, the proper conclusion to be drawn from the judge's decision to grant the Commonwealth's motion is precisely the one provided by the judge herself, namely, that the nondisclosure of the new information had denied Drumgold his constitutional rights, among them the right to a fair trial.

The court also looks beyond the grounds on which judicial relief was granted to the underlying "facts and circumstances," *ante* at 378, which it concludes are probative of Drumgold's innocence. The court finds support for such a review of the evidence in the construction of the statute's eligibility provision in *Guzman* v. *Commonwealth*, *ante* 354 (2010) (*Guzman*), also decided today, in which the court holds that claimants are eligible to bring suit where there are "grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit the crime." *Id.* at 362, quoting *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. 466, 477 (2009). That construction extends the statute far beyond its text: whereas the statute grants eligibility to those who receive judicial relief "on *grounds* [that] tend to establish . . . innocence" (emphasis supplied), G. L. c. 258D, § 1 (B) (ii), the court in *Guzman* provides eligibility to those granted relief on "grounds resting upon *facts and circumstances*" tending to establish innocence (emphasis supplied), *Guzman*, *supra*. In basing eligibility on an independent review of the underlying facts, the court ignores the Legislature's decision to condition eligibility on the grounds on which the judge based her relief. Nothing in the court's parsing of statutory text in *Guzman* establishes a basis for inserting this independent review of the "facts and circumstances" into a construction of the statute.

The present case illustrates the distinction between grounds for judicial relief and underlying facts. The judicial relief in this case was the vacating of Drumgold's conviction. The grounds for that relief were the violations of his constitutional rights at trial. The facts and circumstances on which those grounds rest include new information that could impeach the testimony of two trial witnesses. Whatever conclusion the court may reach on its own regarding the likelihood of Drumgold's innocence

based on those facts and circumstances, no conclusion that tended to establish his innocence was incorporated into the grounds for relief by the motion judge. As such, it does not form a basis for eligibility pursuant to the language of the statute.

Even if the court's approach were permissible under the statute, the court's decision would remain problematic. The court reasons that, because new information pertaining to Evans and Alexander "might well have changed the jury's credibility calculation" as to those witnesses, *ante* at 378, it might in turn have influenced the jury's view of Drumgold's claimed alibi,[2] see *id.* The court concludes on that basis that the judge's order provided relief on grounds tending to establish innocence. *Id.* I do not agree. The grounds for relief must do more than tend to change the jury's credibility calculations or the verdict they might reach. The grounds for relief must tend to establish that the defendant actually did not commit the offense charged. It is not enough for the court to conjecture a series of inferential steps that a jury might take as a result of the new information if, in the final analysis, it would generate a verdict of not guilty but fall short of tending to establish that the defendant is not, in fact, a wrongdoer.

The Legislature's purpose in adopting this statute was to compensate certain erroneously incarcerated persons because they did not commit the offenses with which they were charged. The statute's relevant eligibility requirement accordingly limits suit to those whose relief is based on grounds tending to establish such actual innocence. As the court's decision today is not faithful to that purpose, I cannot join in it.

---

[2]If the new evidence changed the jury's view of Drumgold's alibi, that may create only a reasonable doubt as to his guilt. It does not necessarily establish his innocence.