MICHAEL RILEY vs. COMMONWEALTH.

No. 11-P-1703.

Suffolk. April 11, 2012. - July 20, 2012.

Present: RAPOZA, C.J., KANTROWITZ, & KAFKER, JJ.

*Erroneous Conviction.*

Discussion of the Erroneous Convictions Law, G. L. c. 258D, which permits individuals who have been wrongfully convicted and imprisoned to sue for relief including damages, and of the "grounds which tend to establish innocence" test. [211-214]

In a civil action in which the plaintiff sought compensation for his wrongful conviction and imprisonment, the judge erred in denying the Commonwealth's motion for judgment on the pleadings, where the facts and circumstances underlying the reversal of the plaintiff's conviction did not tend to show the plaintiff's innocence, in that the reversal was based on the erroneous admission in evidence of additional hearsay evidence of guilt provided by his codefendants, not the exclusion of evidence probative of the plaintiff's innocence. [214-216]

CIVIL ACTION commenced in the Superior Court Department on December 20, 2007.

The case was heard by *Geraldine S. Hines*, J., on a motion for judgment on the pleadings.

*Helene Kazanjian*, Assistant Attorney General, for the Commonwealth.

*John F. Palmer* for the defendant.

KAFKER, J. The plaintiff, Michael Riley, was convicted in 1986 of manslaughter and other charges as a joint venturer, but the Supreme Judicial Court reversed his convictions due to violations of *Bruton* v. *United States*, 391 U.S. 123 (1968) (*Bruton*). See *Commonwealth* v. *Cunningham*, 405 Mass. 646, 660 (1989) (reversing convictions of Leo Cunningham and Riley because of *Bruton* errors). At a retrial, Riley was acquitted of all charges. Following passage of the Erroneous Convictions

Law, G. L. c. 258D, Riley brought this action seeking compensa-
tion for his wrongful conviction and imprisonment. The ques-
tion before us is whether Riley falls within the class of persons
eligible to seek compensation under the statute. More particularly,
we must decide whether his conviction was reversed on "grounds
resting upon facts and circumstances probative of the proposi-
tion that the claimant did not commit the crime." *Guzman* v.
*Commonwealth*, 458 Mass. 354, 362 (2010) (*Guzman*), quoting
from *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. 466, 477
(2009). We conclude that the reversal based on the *Bruton*
grounds here — that is, the erroneous admission of additional
hearsay evidence of guilt provided by his codefendants — did
not render him eligible for compensation, and we therefore
reverse the order of the Superior Court judge denying the Com-
monwealth's motion for judgment on the pleadings.

*Background.* The facts underlying Riley's criminal case are
as follows. Riley's friend Ramon Libran was involved in a fight
with several individuals in Chelsea. *Commonwealth* v. *Cunning-
ham, supra* at 647. The following evening, Libran, Riley,
Riley's brother, and two others drove around Chelsea looking
for the men involved in the fight. *Ibid.* They eventually found
three of the men. *Id.* at 648. Libran chased down one man and
stabbed him repeatedly, killing him. *Ibid.* Riley's brother punched
another of the men and cut him with a knife. *Ibid.* Riley was
present but not active in the violence. See *id.* at 649. He was
prosecuted only as a joint venturer. *Ibid.* "The only contested
issue [was] whether [he] had the requisite intent . . . ." *Id.* at
650.

Much of Riley's statement to the police, which was admitted
at trial, was exculpatory as to intent. See *id.* at 651. He stated
that he joined the group shortly before they found the men they
were looking for that evening. See *id.* at 652. He also indicated
that he had told Libran before the stabbing, "[T]his is crazy, I
want to go home." *Id.* at 651. Additionally, he stated that he
tried to break up the fight involving his brother, and that he was
surprised to learn that Libran had stabbed someone.[1] *Id.* at
651-652. A codefendant's girlfriend partially supported Riley's

---

[1] Riley did, however, admit that he knew his brother and Libran had knives
and that he had heard Libran talk about beating people up. *Commonwealth* v.
*Cunningham, supra* at 652.

version of events, testifying that he told Libran, "I don't believe you, you shouldn't have stabbed him." *Id.* at 653. However, she also partially contradicted him, stating that "prior to the incidents, all four defendants were talking about the fight the night before and about how they were looking for those who had been involved . . . [and how they] intended to beat up those people if they located them." *Id.* at 652.

In addition to this evidence, the statements of two nontestifying codefendants were admitted at trial under an interpretation of *Bruton* that was later repudiated by the United States Supreme Court. See *id.* at 649. These statements added materially to the evidence of Riley's intent. In particular, one codefendant stated that Riley had been driving around with the group for four hours looking for the men involved in the fight, and that "people were going to get out of [the] car and have a fist fight with the people that jumped [Libran]." *Id.* at 651-652. The Supreme Judicial Court held that these statements were not wholly cumulative of other evidence and "could have affected [the] verdicts against" Riley. *Id.* at 653.

After the plaintiff filed his complaint for compensation in this action, the Commonwealth moved for judgment on the pleadings under Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974). It argued that the grounds for the reversal of Riley's conviction did not tend to establish his innocence, and therefore he was ineligible to bring the action. The motion judge denied the motion, ruling that Riley was eligible to sue, and the Commonwealth appealed.[2]

*Erroneous Convictions Law.* Under G. L. c. 258D, an individual who has been wrongfully convicted and imprisoned may sue for relief including damages of up to $500,000. See *Guzman,* 458 Mass. at 355-356 & n.4; G. L. c. 258D, § 5. A plaintiff is eligible to bring such a claim if, as relevant here, a State court reversed his felony conviction "on grounds which tend to establish the innocence of the [plaintiff]," and he is later

---

[2]As no party has argued the appealability of this order, we assume without deciding that the Commonwealth is entitled to appeal under the doctrine of present execution. See *Drumgold* v. *Commonwealth,* 458 Mass. 367, 368 n.2 (2010) ("The Commonwealth filed an appeal from the judge's order denying summary judgment, claiming that the ruling was immediately appealable under the doctrine of present execution . . . . We do not rule on the point").

acquitted at a retrial. G. L. c. 258D, § 1(B)(ii), inserted by St. 2004, c. 244, § 1.

In explaining the meaning of "grounds which tend to establish the innocence of the [plaintiff]," the Supreme Judicial Court has relied in part on the legislative history of the provision. The relevant provision evolved from an earlier formulation rejected and returned by the Governor, which had provided for eligibility for compensation based on reversals on "grounds consistent with . . . innocence." *Guzman, supra* at 358. As the Supreme Judicial Court explained: "The Governor's amendment, eventually adopted into law, was plainly intended to limit the scope of the bill's original language." *Ibid.* The court further explained that "it is possible to envision many potential claimants whose convictions are reversed because of procedural or evidentiary errors or structural deficiencies at their trials that could well be 'consistent' with innocence without *any* tendency to establish it" (emphasis in original). *Ibid.* The court then provided a list of examples of such cases, including admission of ballistics certificates and closure of the courtroom in violation of the Sixth Amendment to the United States Constitution; admission of expert deoxyribonucleic acid testimony without the necessary statistical explanations; ineffective assistance of counsel for failure to request a provocation instruction; incorrect jury instructions on the third prong of malice; prosecutorial misconduct by giving unsworn testimony and vouching for a key prosecution witness; erroneous disallowance of a defendant's peremptory challenge; and, most importantly for our purposes here, admission of a nontestifying codefendant's confession "in contravention of *Bruton* v. *United States*." *Id.* at 358 n.6.

With these considerations in mind, the Supreme Judicial Court then defined the class of plaintiffs eligible for compensation as those whose convictions were reversed on "grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit the crime." *Id.* at 362, quoting from *Guzman* v. *Commonwealth*, 74 Mass. App. Ct. at 477.[3]

---

[3] If the plaintiff meets these eligibility criteria, he then bears the burden of establishing by clear and convincing evidence, among other things, that "he did not commit the crimes or crime charged in the indictment or complaint." G. L. c. 258D, § 1(C)(vi). See *Guzman, supra* at 360-361. In other words, a

*Previous applications of the "grounds which tend to establish innocence" test.* The Supreme Judicial Court has decided two instructive cases applying G. L. c. 258D. In *Guzman,* the plaintiff had been convicted of multiple drug offenses. *Guzman, supra* at 355. His defense at trial was mistaken identity, namely, that he had been mistaken for his cousin. See *id.* at 362-363. Two police officers testified that they had seen Guzman selling cocaine to two buyers. *Id.* at 363. Guzman's trial counsel had previously represented one of these buyers. *Ibid.* The buyers would have testified that Guzman was not the one who had sold them the cocaine, thus bolstering his defense. *Id.* at 363 & n.15. However, in order to avoid the appearance of a conflict of interest, Guzman's counsel not only declined to call the buyers but also prevented the Commonwealth from calling one of them to testify. *Id.* at 363 & n.16. A judge granted Guzman a new trial based on ineffective assistance of counsel due to the exclusion of key exculpatory evidence. *Id.* at 363-364 & n.17.

The Supreme Judicial Court held that Guzman was eligible to bring a G. L. c. 258D claim because "the erroneously omitted evidence was probative of the conclusion that the culprit was someone else." *Id.* at 365. It went on: "Essential to our analysis here is that counsel's ineffective assistance took the form of depriving Guzman of the introduction of evidence tending to establish his actual innocence." *Id.* at 365 n.20.

The other reported case applying the statute is *Drumgold* v. *Commonwealth,* 458 Mass. 367 (2010) (*Drumgold*), decided the same day as *Guzman.* Drumgold was convicted of murder after masked gunmen shot and killed a twelve year old girl in the Roxbury section of Boston. *Id.* at 370. His defense at trial was misidentification, and he presented multiple alibi witnesses as well as his own testimony that he was elsewhere at the time of the shooting. *Id.* at 371. After Drumgold spent fourteen years in prison, a judge granted the Commonwealth's motion for a new trial based on newly discovered evidence and previously withheld exculpatory evidence related to two key witnesses. See *id.* at 371, 375-376. Specifically, Drumgold presented evidence

plaintiff must first show that the grounds for judicial relief were probative of his innocence, and then demonstrate that he was in fact innocent of the crimes charged.

that, when a critical witness identified him and when she testified at trial, she was suffering from terminal brain cancer, with symptoms including blurred vision, amnesia, and disorientation. *Id.* at 373. This condition obviously undercut the reliability of her identification. Separately, another significant witness recanted his trial testimony and testified that he had been given material undisclosed inducements by the police. *Id.* at 373-374. The Commonwealth conceded that the failure to disclose these inducements "deprived [Drumgold] of his constitutional right to cross-examine [the witness] effectively to show potential bias." *Id.* at 375 (first alteration in original).

The *Drumgold* court rejected the Commonwealth's argument that Drumgold was ineligible for compensation because the motion judge's ruling was based on the unfairness of the trial rather than a determination that Drumgold might be innocent. *Id.* at 377-378. Specifically, the court held that the new evidence and undisclosed evidence "were probative of the central issue at trial: the reliability of the identification of Drumgold as one of the shooters and, correspondingly, the veracity of his alibi defense." *Id.* at 378. Because of the absence of this "critical evidence," "the fact finder was forestalled from making a fully informed decision as to the defendant's guilt or innocence." *Ibid.*

*Application of "grounds which tend to establish innocence" test in the instant case.* At the outset, we reject the Commonwealth's argument that *Guzman* established a categorical rule barring any plaintiff whose conviction was reversed due to a *Bruton* error from seeking compensation. It is our understanding that the footnote was meant to provide guidance on the types of reversals "that could well be 'consistent' with innocence without any tendency to establish it," but was not setting forth a definitive rule barring recovery for any of the types of errors listed in the footnote.[4] *Guzman, supra* at 358, quoting from *Guzman* v. *Commonwealth,* 74 Mass. App. Ct. at 477. The test ultimately adopted by the Supreme Judicial Court requires us to look not only at the legal rationale for judicial relief but also at the "facts and circumstances" on which the relief rests. See *Guzman, supra* at 362, quoting from *Guzman* v. *Commonwealth,* 74 Mass. App. Ct. at 477.

---

[4]The motion judge also properly rejected this categorical approach.

Nonetheless, in this case the facts and circumstances underlying reversal do not tend to show Riley's innocence. Rather, as in *Commonwealth* v. *Bacigalupo*, 455 Mass. 485, 495-496 (2009) (*Bacigalupo*), the facts and circumstances justifying the reversal are the erroneous admission of additional evidence of guilt, not the exclusion of evidence probative of innocence. See *Guzman*, *supra* at 358 n.6.

In *Bacigalupo*, the identification of the defendant as the murder culprit depended on the testimony of "a convicted felon testifying pursuant to a proffer agreement with the Commonwealth [who] did not name his assailants to the government until, four years after the shootings, he was in jeopardy of being charged with serious offenses." *Bacigalupo*, *supra* at 496. This shaky foundation was shored up through the admission of a codefendant's confession, in violation of *Bruton*. See *id.* at 492, 494-495. Although the evidence apart from the inadmissible confession was sufficient to convict Bacigalupo, his convictions were reversed because the error might have had an impact on the jury's deliberations. See *id.* at 491, 496.

Similarly, the Commonwealth produced sufficient but not overwhelming evidence of Riley's intent, and the *Bruton* errors required reversal because they "could have affected [the] verdicts against him." *Commonwealth* v. *Cunningham*, 405 Mass. at 653. In neither Bacigalupo's case nor Riley's was evidence probative of the defendant's innocence kept from the fact finder. Compare *Guzman*, *supra* at 365.

Unlike in *Drumgold*, the fact finder here was not "forestalled from making a fully informed decision." *Drumgold*, *supra* at 378. On the contrary, Riley's first jury had *too much* information, including the confessions that they should not have heard. The Legislature clearly did not intend to provide compensation merely because evidence of a claimant's guilt should have been suppressed or excluded. See G. L. c. 258D, § 1(F) (providing that, at trial on the merits of the compensation claim, "[n]o evidence proffered by any party shall be excluded on grounds that it was seized or obtained in violation of the Fourth, Fifth or Sixth [A]mendments to the Constitution of the United States, or in violation of Articles 12 or 14 of Part the First of the Constitution of Massachusetts").

The absence of the codefendants' statements evidently "changed the . . . credibility calculation" at Riley's second trial, where he was acquitted. *Drumgold, supra* at 378. But if this were enough to establish eligibility, any evidentiary error weighty enough to warrant reversal (including the *Bruton* error in *Bacigalupo*) would suffice. In order to pass the initial bar of G. L. c. 258D, § 1(B), "the relief granted must be on grounds tending to do more than merely assist the defendant's chances of acquittal." *Guzman, supra* at 360. Nothing in the reversal of Riley's convictions on *Bruton* grounds, or the facts and circumstances underlying that relief, tends to show that Riley was innocent. The court's ruling only made it more difficult for the Commonwealth to prove that he did commit the crimes by excluding additional inadmissible evidence of guilt. Therefore, Riley is not eligible to pursue a claim under G. L. c. 258D.

*Conclusion.* The order denying the Commonwealth's motion for judgment on the pleadings is reversed. A new order shall enter dismissing the plaintiff's complaint.

*So ordered.*