NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12281


OMARI PETERSON vs.  COMMONWEALTH.



Suffolk.     September 5, 2017. - November 29, 2017.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, & Cypher, JJ.


Erroneous Conviction.  Practice, Civil, Motion to dismiss,
      Review of interlocutory action.



Civil action commenced in the Superior Court Department on
December 12, 2014.

A motion to dismiss was heard by Peter M. Lauriat, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Adam R. LaGrassa, Assistant Attorney General, for the
Commonwealth.
William S. Smith for the plaintiff.


LOWY, J.  After the Appeals Court reversed the conviction

of the plaintiff, Omari Peterson, and set aside the verdict on a

charge of unlawful possession of a dangerous weapon, he filed a

civil complaint in the Superior Court seeking compensation under

the erroneous convictions statute, G. L. c. 258D.  A judge

denied the Commonwealth's motion to dismiss the complaint, and the Commonwealth appealed.[1]  We transferred the case here on our own motion to determine whether, under G. L. c. 258D, § 1 (B) (ii), Peterson is eligible to pursue a claim for compensation.  Because we conclude that Peterson's conviction was not reversed by the Appeals Court on "grounds which tend to establish" his innocence within the meaning of this statute, he is not eligible to seek compensation under it.  Accordingly, we vacate the order denying the Commonwealth's motion to dismiss and remand the case to the Superior Court, where judgment shall enter for the Commonwealth.

Background and prior proceedings.  We recite the uncontested facts.  The charge underlying Peterson's conviction stemmed from a traffic stop of the motor vehicle Peterson was driving.  The officers stopped the vehicle in an area known for gang activity after observing the driver commit several traffic infractions.  The officers approached the driver's side of the vehicle and asked Peterson for his driver's license and registration, both of which he promptly provided.  Despite confirming that Peterson's driver's license and registration

---

[1] The Commonwealth is entitled, under the doctrine of present execution, to seek interlocutory review of the order denying its motion to dismiss with respect to Omari Peterson's eligibility under G. L. c. 258D, § 1 (B) (ii).  See Irwin v. Commonwealth, 465 Mass. 834, 842 (2013).

were valid, the officers ordered Peterson to step out of the vehicle.  As Peterson did so, the officers noticed that a knife was clipped to his jeans.  Peterson was then placed under arrest for carrying a dangerous weapon, G. L. c. 269, § 10 (b).

Peterson moved to suppress the knife prior to trial, arguing that the exit order lacked constitutional justification. That motion was denied, and the case proceeded to trial.  A jury found Peterson guilty of unlawful possession of a dangerous weapon, G. L. c. 269, § 10 (b), and he was sentenced to two and one-half years in a house of correction.

On direct appeal, Peterson challenged his conviction on the grounds that (1) the judge erred in denying his motion to suppress because the exit order, resulting in discovery of the knife, was not supported by reasonable suspicion; (2) there was insufficient evidence to establish that the knife was a "dangerous weapon" within the meaning of G. L. c. 269, § 10 (b); and (3) jury instructions.  In its unpublished memorandum and order pursuant to its rule 1:28, see Commonwealth v. Peterson, 82 Mass. App. Ct. 1118 (2012), a panel of the Appeals Court determined that the exit order was invalid because it was devoid of specific, articulable facts to support a reasonable apprehension of danger or that a crime had been committed; the police inquiry should have terminated once Peterson produced a valid driver's license and registration.  Concluding that the

motion to suppress the knife should have been granted, the Appeals Court reversed Peterson's conviction and set aside the verdict, but did not reach his additional claims on the ground that they were rendered moot. Accordingly, that court did not address whether there was sufficient evidence to establish that the knife was a dangerous weapon under the governing statute.

After Peterson filed his complaint in the Superior Court seeking compensation under the erroneous convictions statute, the Commonwealth moved to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). A Superior Court judge denied the Commonwealth's motion, reasoning that the effect of the Appeals Court's decision was that there was no longer a judicial determination that the knife found on Peterson was dangerous under G. L. c. 269, § 10 (b), and that absent a determination by the Appeals Court that the knife was legal, it would be speculative to presume that the reversal of Peterson's conviction rested on grounds tending to establish innocence.

Statutory overview. The Legislature enacted the erroneous convictions statute, G. L. c. 258D, in 2004 in response to the steady increase in exonerations in Massachusetts and throughout the nation. See Guzman v. Commonwealth, 458 Mass. 354, 355 (2010). See also Irwin v. Commonwealth, 465 Mass. 834, 847-850

(2013).[2] The erroneous convictions statute provides a cause of action against the Commonwealth for certain "erroneous felony conviction[s] resulting in incarceration." G. L. c. 258D, § 1 (A). The class of claimants eligible to pursue relief includes "those who have been granted judicial relief by a [S]tate court of competent jurisdiction, on grounds which tend to establish the innocence of the individual." G. L. c. 258D, § 1 (B) (ii).[3,4]

---

[2] In construing the erroneous convictions statute's language setting out the requirement that to be eligible for recovery under the statute, a person must show that his or her conviction was reversed "on grounds which tend to establish" innocence, we have examined the "exchange between the legislative and executive branches" in order to discern a legislative intent relative to threshold eligibility. Guzman v. Commonwealth, 458 Mass. 354, 358 (2010). "The version of the bill initially passed by the Legislature and sent to the Governor for signature provided for eligibility where judicial relief had been granted 'on grounds consistent with . . . innocence.'" Id., quoting 2004 House Doc. No. 4166, as replaced by 2004 House Doc. No. 4981. The final bill enacted into law, however, adopted the Governor's proposed amendments that replaced "the phrase 'consistent with' with the phrase 'which tend to establish' in § 1 (B) (ii)." Guzman, supra, quoting 2004 House Doc. No. 4166, as replaced by 2004 House Doc. No. 5030.

[3] An individual seeking eligibility under G. L. c. 258, § 1 (B) (ii), must also show that the indictment or complaint underlying his conviction has been dismissed, that a nolle prosequi has been entered, or that he was found not guilty at a new trial.

[4] "[T]he eligibility requirement is 'separate and distinct from the merits of the claim of relief that a claimant must establish at trial,' namely that he or she did not commit the charged offense." Renaud v. Commonwealth, 471 Mass. 315, 319 (2015), quoting Irwin, 465 Mass. at 842. At trial, the burden

We have previously construed the eligibility language at issue, "grounds which tend to establish [] innocence."  G. L. c. 258D, § 1 (B) (ii).  The statute does not restrict eligibility "to individuals whose convictions were vacated or reversed strictly on the basis 'of compelling or overwhelming exculpatory evidence,' that is, on the grounds that they were actually innocent."  Irwin, 465 Mass. at 844, quoting Guzman, 458 Mass. at 359.  "Rather, 'grounds which tend to establish' a plaintiff's innocence require that a conviction be overturned 'on grounds resting upon facts and circumstances probative of the proposition that the claimant did not commit the crime.'"  Irwin, supra, quoting Guzman, supra.

"We have cautioned, however, that such grounds must 'tend[] to do more than merely assist the defendant's chances of acquittal.'"  Irwin, supra, quoting Guzman, supra at 360.  "[C]onvictions that are reversed only because of 'procedural or evidentiary errors or structural deficiencies at . . . trial[] that could well be 'consistent' with innocence without any tendency to establish it' would not meet the statutory definition."  Irwin, supra at 846, quoting Guzman, supra at 358.

_____

on individuals eligible to seek relief under the erroneous convictions statute is much greater:  they bear the burden of establishing by "clear and convincing evidence" that they did not commit the crimes with which they were charged.  G. L. c. 258D, § 1 (C).

Discussion.  Both the Commonwealth and Peterson rely on

previous case law to argue whether Peterson's conviction was

reversed "on grounds which tend to establish" his innocence

under G. L. c. 258D, § 1 (B) (ii).  See Drumgold v.

Commonwealth, 458 Mass. 367, 376-378 (2010); Guzman, 458 Mass.

at 357-362.  See also Renaud v. Commonwealth, 471 Mass. 315,

318-320 (2015); Irwin, 465 Mass. at 843-847, 850.

We first interpreted the eligibility requirement language

in Guzman, 458 Mass. at 357-362.  In that case, a Superior Court

judge allowed Guzman's motion for a new trial because trial

counsel, to avoid what he perceived to be a conflict of

interest, took actions that prejudiced Guzman's defense of

misidentification and deprived him of a fair trial.  Id. at 363-

364.  More specifically, the judge found that Guzman was denied

the effective assistance of counsel because trial counsel failed

to call two percipient witnesses who would have testified that

someone other than Guzman committed the crimes.  Id. at 363.[5]

Although presented in the context of an ineffective assistance

claim, we held that Guzman's reversal "rest[ed] upon facts and

_____

[5] Guzman's trial counsel had represented a percipient
witness in a recently completed case, who, if called to testify
at Guzman's trial, would have contradicted the testimony of the
Commonwealth's key witnesses.  Guzman, 458 Mass. at 363.  Not
only did counsel fail to call these witnesses at trial, but he
also moved successfully to prevent one of the two from being
called as a witness by the Commonwealth.  Id. at 363 n.16.

circumstances probative of the proposition that Guzman did not commit the crimes charged as required by G. L. c. 258D, § 1 (B) (ii)." Id. at 365. Essential to our analysis was that "counsel's ineffective assistance took the form of depriving Guzman of the introduction of evidence tending to establish his actual innocence." Id. at 365 n.20.

In Drumgold, 458 Mass. at 376-379, decided the same day as Guzman, this court held that the order granting a new trial, based the absence of critical evidence that undermined the credibility of two key prosecution witnesses, satisfied the eligibility requirement of § 1 (B) (ii). Drumgold was convicted of murder in the first degree based, in large part, on the testimony of two eyewitnesses who identified him as the assailant. Id. at 378. One witness was discovered to have had terminal brain cancer, which significantly diminished her testimonial faculties, id. at 372-373, and the other had received undisclosed inducements to testify at Drumgold's trial, id. at 373-375. These omissions, which prevented meaningful cross-examination of key prosecution witnesses, detracted from the reliability of the Commonwealth's identification of Drumgold as one of the perpetrators and, therefore, from the strength of his alibi defense. Id. at 375, 378. The grounds for the allowance of Drumgold's motion for a new trial, accordingly,

9

"rested on facts and circumstances probative of [his] innocence." Id. at 378.

In contrast, this court concluded in Irwin, 465 Mass. at 854-855, that the grant of a new trial based on the erroneous inclusion at Irwin's initial trial of consciousness of guilt evidence related to his prearrest silence did not rest on facts and circumstances tending to establish his innocence. We explained that while the inclusion of improper consciousness of guilt evidence was an error of law, its exclusion "did not change the weight of the properly admitted evidence." Id. at 854. Nor did its exclusion "make it more likely that Irwin did not commit the offense charged." Id. at 855. Thus, reversal of his conviction on this basis did not constitute "grounds which tend to establish" innocence under the statute, and the eligibility requirement therefore was not met. Id.

More recently, in Renaud, 471 Mass. at 319-320, we held that reversal of Renaud's convictions by the Appeals Court on the basis of insufficient evidence to prove that Renaud was the person who committed the crimes charged constituted "grounds which tend to establish" innocence under G. L. c. 258D, § 1 (B) (ii). Renaud's convictions, all of which related to a break-in, rested "almost entirely" on an electronic bank transfer card bearing his name that police found at the burglarized home. Renaud, supra at 316-317. In determining that Renaud was

eligible under the erroneous convictions statute, our conclusion rested on "the unique facts" of that case, that is, that "the Commonwealth's 'insufficient evidence' pertained to [] [Renaud's] identity."  Id. at 319.

Here, similar to Irwin, Peterson's conviction was not overturned on grounds probative of the proposition that he did not commit the crime of which he was convicted.  Peterson's conviction was overturned because of the improper denial of his pretrial motion to suppress the knife obtained during the unjustified exit order.  Reversal on this basis is not probative of the proposition that Peterson did not commit the crime for which he was convicted.  The Appeals Court's decision reversing Peterson's conviction implicates only the constitutionality of the police officers' conduct.  See Ornelas v. United States, 517 U.S. 690, 704 (1996) ("[T]he issue in these probable-cause and reasonable-suspicion cases is not innocence but deterrence of unlawful police conduct"); Commonwealth v. Lora, 451 Mass. 425, 438 (2008) ("The suppression of evidence under the exclusionary rule is a 'judicially created remedy,' whose 'prime purpose is to deter future unlawful police conduct'" [citation omitted]). Suppression of the knife based on the unjustified exit order, therefore, is not probative of whether Peterson possessed a dangerous weapon.  This is true notwithstanding the fact that the Appeals Court's decision, as a practical matter, required

the dismissal or nolle prosequi of the underlying criminal charge.

In sum, unlike in Guzman and Drumgold, where the grounds for relief were based on omissions that would have detracted from the weight of the Commonwealth's evidence and were probative of the proposition that the defendants in those cases did not commit the crimes charged, or Renaud, where the grounds for relief rested on insufficient evidence pertaining to the defendant's identity as the person who burglarized the home, Peterson's reversal was unrelated to the weight of the evidence establishing that he was in possession of a dangerous weapon. Thus, Peterson cannot meet the threshold eligibility requirement because reversal on the basis of an unjustified exit order does "not rest on facts and circumstances probative of the proposition that [Peterson] did not commit the crimes charged" in the complaint. Guzman, 458 Mass. at 365.

To the extent that Peterson claims eligibility under G. L. c. 258D based on an argument that he raised in his direct appeal but that was not considered by the Appeals Court -- namely, that the knife he was carrying in fact did not qualify as a dangerous weapon within the meaning of G. L. c. 269, § 10 (b) -- there is nothing in the language of the erroneous convictions statute or our cases interpreting it that suggests arguments raised but not relied on in reversing or vacating a conviction render an

individual eligible to seek relief under that statute.[6]  See

Guzman, 458 Mass. at 361, citing Norfolk & Dedham Mut. Fire Ins.

Co. v. Morrison, 456 Mass. 463, 468 (2010) ("Unless the plain

meaning of the statute requires it, we will not expand or limit

its meaning").

Conclusion.  We conclude that Peterson's conviction was not

overturned on grounds tending to establish his innocence,

thereby rendering him ineligible for compensation under G. L.

c. 258D, § 1 (B) (ii).  The order denying the Commonwealth's

motion to dismiss is vacated and set aside.  The case is

remanded to the Superior Court, where judgment shall enter for

the Commonwealth.

So ordered.

---

[6] Peterson's position is that the knife was not a dangerous weapon under G. L. c. 269, § 10 (b).  As the Appeals Court has recognized, the fact that a knife blade can be locked in place, without more, is insufficient to qualify as a dangerous weapon; there must also be "a 'device or case' that allow[s] the blade to be drawn at a locked position."  Commonwealth v. Higgins, 85 Mass. App. Ct. 534, 536 (2014), quoting G. L. c. 269, § 10 (b). The record before this court is inadequate to resolve whether the knife Peterson was carrying qualified under the statute.

GANTS, C.J. (concurring).  I agree with the court that the ground on which the Appeals Court vacated Omari Peterson's conviction of unlawful possession of a dangerous weapon, G. L. c. 269, § 10 (b) -- the unconstitutional exit order that led to the discovery of the knife clipped to his jeans -- was not a ground "which tend[s] to establish [his] innocence" of the crime charged, and therefore not a ground that makes him eligible for compensation under G. L. c. 258D, § 1 (B) (ii).  I write separately to note that, if Peterson is correct that the knife which he was convicted of possessing was not the type of knife whose possession is a crime under G. L. c. 269, § 10 (b), the Appeals Court denied him the opportunity to seek the compensation that he might be entitled to by resting its reversal solely on the unconstitutional exit order and not reaching the question whether the evidence was insufficient as a matter of law.  And if Peterson is correct that his possession of the knife was not a crime, there is the additional unfairness that he is denied the opportunity to seek compensation for his wrongful conviction only because he suffered a separate constitutional violation that, when considered alone, was sufficient to require the dismissal of the criminal complaint.

A lesson learned from this appeal is that, in the absence of corrective legislation, appellate courts in criminal cases need to be mindful of the practical consequences of not reaching

a defendant's claim that the evidence at trial was insufficient as a matter of law to permit a guilty verdict, where reversal of the conviction on this ground would tend to establish the innocence of the individual, see, e.g., Renaud v. Commonwealth, 471 Mass. 315, 319-320 (2015), and where the ground that is the basis for reversal would not.  The practice of this court has generally been to address challenges to the sufficiency of the evidence before evaluating other claims, because a determination that the evidence was insufficient as a matter of law to support a conviction will always result in dismissal of the complaint with prejudice, but a determination of error on other grounds may result in reversal of the conviction but not dismissal of the complaint.  See, e.g., Commonwealth v. Aldana, 477 Mass. 790, 797 (2017); Commonwealth v. Morse, 468 Mass. 360, 375 n.21 (2014).  I recognize that the Appeals Court here dismissed the complaint after concluding that the motion to suppress the knife should have been allowed.  But if Peterson is correct that his possession of the knife was not a crime, the unintended consequence of the Appeals Court's not reaching the issue of the sufficiency of the evidence might be to deny him compensation to which he otherwise might be entitled for a wrongful conviction.